UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAREN C.,**  Plaintiff,  v.  **COMMISSIONER OF SOCIAL SECURITY,**  Defendant. | Civ. No. 21-10992 (KM)  **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Caren C. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Caren C. was not disabled from December 28, 2017, through August 11, 2020, the date of the decision. Caren C. claims the ALJ's decision is not supported by substantial evidence.

I agree that the ALJ's decision contains a number of internal contradictions that render its determinations unsupported by substantial evidence and I therefore **REMAND** this case for further proceedings.

1

I.     **BACKGROUND**[1]

Caren C. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on June 12, 2018, alleging disability as of December 28, 2017. (AR 21.) Caren C.'s application was denied initially and on Reconsideration. (AR 103–138.) Caren C. requested a hearing before an ALJ to review her application de novo. (AR 139–55.) An initial hearing was held on March 12, 2020, before ALJ Theresa Merrill, and a second, continued hearing on July 9, 2020. (AR 46–102.) ALJ Merrill issued a decision on August 11, 2020. ALJ Merrill denied disability at step five of the sequential evaluation, concluding that, although Caren C. could no longer perform her past relevant work, she is capable of adjusting to light work that accommodates her limitations and exists in significant numbers in the national economy. (AR 21–34.)

Caren C. requested Appeals Council Review of ALJ Merrill's decision and presented as additional evidence a letter from Christopher Williamson, a psychiatrist.[2] (AR 1–10.)  Her request was denied on April 26, 2021, and this denial rendered ALJ Merrill's decision the final decision of the Commissioner. (AR 1–8.) Caren C. now appeals that decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1]     Certain citations to the record are abbreviated as follows:

DE = docket entry in this case

AR = Administrative Record (DE 5)

Pl. Br = Plaintiff's brief in support of its remand (DE 8)

Def. Br. = Commissioner's brief in opposition to remand (DE 11)

[2]     The Commissioner disputes whether the letter is appropriate evidence. (Def. Br. at 11–12.) I do not address the issue because I do not rely on the letter in any way in my decision to remand.

## II.  DISCUSSION

### A. Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimants "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her

prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the

4

five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Merrill undertook the five-step inquiry. Her conclusions are summarized as follows:

### Step 1

Although Caren C. did briefly hold a job in 2018, the ALJ concluded that was an unsuccessful work attempt because Caren C. earned a total of only $1,902.02 during her two to three weeks of work and her employment ceased due to her health. (AR 23–24.) Therefore, the ALJ found that Caren C. had not engaged in substantial gainful activity from the alleged onset date of December 28, 2017, through the date of her hearing. (AR 23–24.)

### Step 2

The ALJ found that Caren C. had the following severe impairments: Chronic obstructive pulmonary disease (COPD)/asthma, peripheral neuropathy, lumbar spine dysfunction, cervical spine dysfunction, bilateral shoulder dysfunction, migraine headaches, vertigo, depressive disorder and anxiety disorder. (AR 24.) In addition, the ALJ found that she had one non-severe impairment: hypertension and coronary artery disease. (AR 24.) Nowhere is Caren C.'s diagnosed post-traumatic stress disorder referred to.

**Step 3**

With respect to her severe impairments, Caren C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 18). ALJ Merrill paid particular attention to medical listings 1.02 (major dysfunction of a joint), 1.04 (Disorders of the spine), 3.03 (asthma), 11.14 (Peripheral neuropathy), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). She did not examine 12.15 (trauma- and stressor-related disorders).

First, ALJ Merrill declined to find that Caren C.'s impairments met the criteria for medical listing 1.02 (major dysfunction of a joint) because the medical evidence showed that Caren C. does not suffer from chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion, and there are no findings of joint space narrowing, bony destruction, or ankylosis as required by the listing." (AR 25.)

Second, ALJ Merrill declined to find that Caren C. met the requirements of listing 1.04 (disorders of the spine) because "x-rays of the claimant's spine failed to show any bony or decompression deformities" as required by the listing. (AR 25.)

Third, ALJ Merrill declined to find that Caren C. met the requirements of listing 3.03 (asthma) because Caren C.'s medical records "note largely normal respiratory functioning and findings" and her FEV1 and FVC values are not at or below the value" required by the listing. (AR 25.)

Fourth, ALJ Merrill declined to find that Caren C. met the requirements of listing 11.14 (Peripheral neuropathy) because "evidence demonstrates that the claimant was able to get on and off the examination table without difficulty, use her bilateral hands for fine and gross manipulation and that she, ambulated with a normal gait" and she therefore could not meet the requirements of the listing. (AR 26.)

Finally, ALJ Merrill determined that Caren C.'s mental impairments, both individually and in combination, did not meet the criteria of medical listings

12.04 and 12.06. Specifically, the "paragraph B" criteria were not satisfied. To satisfy "paragraph B" criteria, a claimant's mental impairments "must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves."[3] (AR 26.) In particular, she found that Caren C. had no

---

[3] A claimant's affective disorder meets or medically equals listing 12.04 (Depressive, bipolar and related disorders) when it either satisfies both the paragraph A and paragraph B criteria, or satisfies the C criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.

*Id.*

"'Marked' as a standard for measuring the degree of limitation . . . means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

To meet or medically equal Listing 12.06 (Anxiety and Compulsive Disorders), a claimant must medically document, an anxiety, panic, or obsessive-compulsive disorder *and* the same "Paragraph B" criteria as for medical listing 12.04, *supra.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06; *see also*

7

meaningful limitations in any of the four areas. (AR 26.) Because ALJ Merrill found that Caren C. had no mental limitations she could not possibly meet the listing criteria. (AR 26.)

ALJ Merrill also found that Caren C. did not meet the "paragraph C" criteria, despite having a moderate limitation in the area of adapting and managing herself. (AR 27.) (Why Caren C. had a moderate limitation under paragraph C but no limitation under paragraph B is not explained.) ALJ Merrill also considered Caren C.'s degree of mental limitation when determining Caren C.'s RFC. (AR 27.)

### RFC and Step 4 – Ability to Perform Past Work

Next, ALJ Merrill defined Caren C.'s RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to occasionally balance, stoop, kneel, crouch, crawl and climb ramps and/or stairs, but can never climb ladders ropes and/or scaffolds. Regarding the claimant's use of her bilateral upper extremities, the claimant is able to occasionally push and/or pull and reach overhead with her bilateral upper extremities. Additionally, she is able to frequently reach in all other directions with her bilateral upper extremities. In terms of manipulative limitations, the claimant is able to frequently perform handling, fingering and/or feeling with her bilateral hands. Regarding the claimant's use of her bilateral lower extremities, the claimant is able to occasionally push and/or pull and operate foot controls with her bilateral lower extremities. In terms of environmental limitations, the claimant must avoid even moderate exposure to extreme cold, heat, humidity, fumes, dusts, odors, gases, and other pulmonary irritants. She must also avoid unprotected heights and moving mechanical parts. Lastly, in terms of mental limitations, the claimant is able to understand remember and carry out simple instructions. Moreover, she is able to perform work that is not at high production pace and that is not performed in a team environment. She is also able to

---

https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

> tolerate occasional contact with supervisor, coworkers and the general-public, however, she cannot perform direct customer service with the general-public. Lastly, she is able to adapt to routine changes in workplace on an occasional basis.

(AR 27).

ALJ Merrill began her RFC analysis by explaining that she followed a two-step process in which he first determined whether Caren C. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce [Caren C.'s] pain or other symptoms." (AR 28.) She then explained that in the second step, she "must evaluate the intensity, persistence, and limiting effects of [Caren C.'s] symptoms to determine the extent to which they limit [her] work-related activities." (AR 28) To do this, she is required to look to objective medical evidence, or to the entire case record where objective medical evidence does not substantiate Caren C.'s statements about "the intensity, persistence, and limiting effects claimant's symptoms." (AR 28.)

ALJ Merrill concluded "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 28.) Because Caren C.'s arguments focus primarily on the ALJ's analysis of Caren C.'s mental limitations and does not contest the physical RFC, I focus my attention on the mental aspects.

ALJ Merrill notes that Caren C. has suffered three psychiatric hospitalizations for suicide attempts, including two in 2017. (AR 28.) ALJ Merrill examined evidence of mental limitations from three examining physicians: Dr. Sabol, Dr. Arroyo, and Dr. Rekker. Dr. Sabol found that Caren C. "was responsive to questions, cooperative, and her manner of reacting, social skills, and overall presentation were adequate." (AR 28.) "[H]er hygiene and grooming were adequate," though her "affect was tearful and her mood was depressed." (AR 28–29.) Dr. Sabol also found that Caren C. was oriented as to

9

person and place but not entirely to time, and that her memory was impaired, likely by trauma. (AR 29.)

Dr. Rekker in January 2020 found that Caren C.'s remote memory was impaired, that she was unable to perform "serial 7s," and that her mood was depressed. (AR 29.) Dr. Arroyo found that Caren C.'s psychiatric regiment had modestly benefitted her and that described her mental functioning as normal. (AR 29.) In addition, both Rekker and Sabol diagnosed her with PTSD. (AR 29.)

In November 2018, Dr. Sabol, as a consultative examiner, "opined that the claimant was able to follow and understand simple directions and instructions, as well as perform simple tasks independently. However, she further opined that the claimant would have difficulty maintaining attention and concentration, learning new tasks and performing complex tasks due to problems with her attention, concentration, and poor memory." (AR 30.) The ALJ found this opinion generally persuasive except for its "failure to address time off-task or absences." (AR 30.)

In addition, consultative examiner Dr. Juan Cornejo opined that Caren C. could do light work if she was afforded the needed breaks, but his opinion also did not address time off task. (AR 31.) ALJ Merrill stated "[t]he medical evidence of record supports finding that the claimant would be off-task and/or absent from work due to her impairments." (AR 31.) No such requirement of being off-task or absent, however, appears in the RFC.

Based on these findings, at step four, ALJ Merrill concluded that Caren C. was unable to perform her past relevant work as a Certified Nursing Assistant (Dictionary of Occupational Titles ("DOT") No. 355.674-014), or a deli worker (DOT No. 316.684-014) because the demands of the work exceeded her residual functional capacity. (AR 32.)

## Step 5

At step five, ALJ Merrill explained that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can

10

perform." (AR 32.) Accordingly, she found that Caren C. is not disabled under the SSA. (AR 32.)

To make this determination, ALJ Merrill relied on the testimony of a vocational expert, who testified that Caren C. would still be able to perform the following low-skill light occupations: mail clerk, (DOT No. 222.687-022), Office Helper, (DOT No. 239.567-010); and Photocopy Machine Operator, (DOT No. 207.685-014. (AR 33.) There are between 100,000 and 1,000,000 positions in these three occupations in the United States.

Unmentioned in the ALJ's opinion, but relevant here, is the vocational expert's testimony, in response to a question from the ALJ, that an individual who could only do low-skilled light work could not be employed at a competitive workplace if she were to be off-task 5% or more of the workday and absent from work one day per month. (AR 98.) Receiving this response, the ALJ removed the off-task and absence elements from the hypothetical and the vocational expert opined that without those limitations, the person could perform the above-mentioned occupations. (AR 99.)

### C. Caren C.'s Challenge

Caren C. challenges the Commissioner's decision on a variety of grounds. Some of her arguments are unavailing, but there are several bases for remand. In this case, remand is proper because the ALJ's opinion both contains contradictory findings, *Burnett*, 220 F.3d at 119–20, and does not "explicitly weigh all relevant, probative and available evidence" in the record, *Adorno*, 40 F.3d at 48. First, ALJ Merrill entirely ignored Caren C.'s PTSD diagnosis. Second, there are several inconsistencies within her assessment of Caren C.'s mental limitations. Finally, ALJ Merrill found that Caren C. would need time off-task, but did not integrate that finding into her RFC. These three errors justify remand.

### 1. Analysis

Both Dr. Rekker and Dr. Sabol diagnosed Caren C. with PTSD as a result of abuse she experienced and ALJ Merrill accepted their evidence as

persuasive. (AR 29–31.) ALJ Merrill, however, did not include PTSD as a severe or nonsevere impairment at step 3 and did not discuss the PTSD diagnosis at all in her formulation of the RFC at step 4. In addition, at her hearings, Caren C. testified that she never wanted to go outside, and that she was afraid specifically of coming to Newark where her ex-partner lived. (AR 54, 55.) Because the ALJ did not explicitly discuss and weigh the evidence of PTSD and did not include PTSD when discussing Caren C.'s mental limitations in combination at step 3, the determinations were not supported by substantial evidence. *Adorno*, 40 F.3d at 48.

Second, there are a number of inconsistencies in ALJ Merrill's assessment of Caren C.'s mental limitations. First, analyzing the paragraph B criteria at step 3, ALJ Merrill concluded that Caren C. had no limitations in the four key areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. (AR 26.) Then, when she moved on to the paragraph C criteria, ALJ Merrill determined that Caren C. had moderate limitations in her ability to adapt and manage herself. (AR 27.) In the RFC analysis, ALJ Merrill found persuasive several pieces of medical evidence that Caren C. had limitations in understanding, interacting with others, and maintaining pace. (AR 30.) These limitations were properly integrated into the RFC, but the differences between her analyses at step 3 and step 4 are not explained. For example, it is unclear how she can find Dr. Sabol's evidence of Caren C.'s mental limitations persuasive, but also find at step 3 that Caren C. has no limitation in understanding because "the record shows that the claimant was able to provide information about her health, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers." (AR 26.) Perhaps it is possible that on remand ALJ Merrill can resolve these seeming contradictions, but, as written, the opinion's conclusions are unsupported by substantial evidence. *Burnett*, 220 F.3d at 119–20.

Finally, ALJ Merrill stated that "[t]he medical evidence of record supports finding that the claimant would be off-task and/or absent from work due to her impairments." (AR 31.) This finding, however, was not integrated into Caren C.'s RFC. When presented with a hypothetical involving a claimant who needed to be off-task 5% of the time and absent from work one day per month, the vocational expert testified that such a person would be unemployable. (AR 98.) The failure of ALJ Merrill to integrate her own factual finding into the RFC requires a conclusion that it is not supported by substantial evidence. Given the vocational expert's unequivocal testimony, it is difficult to see how the finding that Caren C. must be off-task and be absent from work can coexist with a finding that she can perform a number of occupations.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is REMANDED for further proceedings. An appropriate order accompanies this Opinion.

Dated: March 30, 2022

/s/ Kevin McNulty
_____

**Hon. Kevin McNulty**
**United States District Judge**